IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| WILLIS A. BRAILEY, | |
| Plaintiff, | |
| v. | Civil Action Number 3:08cv365 |
| ADVANCE AMERICA CASH ADVANCE CENTERS OF VIRGINIA, INC., | |
| Defendant. | |

**MEMORANDUM OPINION**

This matter is before the Court on the plaintiff's motion to strike defendant's opposition to plaintiff's motion for summary judgment, the plaintiff's motion to strike defendant's reply to plaintiff's response to defendant's motion for summary judgment, the plaintiff's motion for summary judgment, and the defendant's motion for summary judgment.

**I. FACTS AND PROCEDURAL HISTORY**

The pertinent facts for the various motions are as follows. In July 2006, the plaintiff ("plaintiff" or "Brailey") was arrested on three charges: assault and battery, abduction and kidnapping, and grand larceny. On September 5, 2006, the plaintiff, who is African American, was hired by the defendant ("defendant" or "Advance") as a manager for its Hanover Center. Prior to hiring Brailey, Advance conducted a background check on Brailey that came back "clean," that is, without convictions or arrests. According to the Advance America Employee Handbook, "[w]hen a current Employee is arrested for or convicted of a misdemeanor or felony, he should notify his

1

supervisor immediately." During Brailey's employment, Advance closed the Hanover Center, resulting in Brailey's reassignment as an Assistant Manager at the Forest Hill Center. Subsequent to this transfer, Brailey contacted Judy Brown ("Brown"), Director of Human Resources for Advance, with questions about the existence of a written parking policy, given that he had been instructed to move his car; Brailey says he perceived this instruction as harassment. Claiming Brailey's questions made her suspicious, Brown ran another background check on Brailey on April 10, 2007. Unlike the first check, the defendant claims, this one revealed a September 14, 2006 misdemeanor conviction for assault and battery. On April 11, 2007, the defendant fired Brailey, even though Brailey attempted to explain to Robert Ivison ("Ivison") and Marsha Gregory ("Gregory"), the Advance employees present at the meeting wherein Brailey was fired, that the conviction had been dismissed (pursuant to his September 14, 2006 appeal thereof). In May 2007, Brailey filed a Charge of Discrimination concerning his termination with the Equal Employment Opportunity Commission ("EEOC"). Concomitantly, in June 2007, Advance filed an appeal with the Virginia Employment Commission ("VEC") regarding a VEC Deputy's Determination that Brailey qualified for unemployment benefits because he was discharged for reasons not shown to constitute misconduct connected with work. Pursuant to that appeal, the VEC conducted telephonic hearings with Gregory, as the Advance representative, and Brailey in August and September of 2007. During the August 2007 hearing, Gregory made allegedly defamatory statements, including that Brailey had been convicted of a felony.

    Having received a right to sue letter from the EEOC, Brailey filed the instant action in June 2008. As there have been many hearings and many motions by Brailey alleging untimely action by Advance, only those proceedings relevant to the instant motions are detailed here. On December 16,

2

2008, Brailey filed a motion for summary judgment. On December 18, 2008, the Court referred all non-dispositive motions to the Honorable United States Magistrate Judge Dennis W. Dohnal. On January 14, 2009, Judge Dohnal issued an order granting the plaintiff leave to file a second amended complaint and granting the defendant until March 1, 2009 to respond to Brailey's motion for summary judgment. On February 18, 2009, Judge Dohnal issued an order extending the discovery deadline to March 11, 2009 and the dispositive motion deadline to March 20, 2009. On March 13, 2009, Brailey filed a supplement to his motion for summary judgment. On March 20, 2009, Advance filed its motion for summary judgment. On March 27, 2009, Advance filed its response to Brailey's motion for summary judgment and Brailey filed his response to Advance's motion for summary judgment, to which Advance filed a reply on April 6, 2009.

## II. LEGAL ANALYSIS

**Motions to Strike**

Brailey asserts that the defendant's opposition to his motion for summary judgment and the defendant's reply to his response to the defendant's motion for summary judgment were untimely. In the former motion, Brailey asserts that Advance's response was untimely because it was not filed within eleven days of the date, December 15, 2008, on which Brailey filed his motion for summary judgment, as mandated by the Local Rules. However, the defendant argues that its response was timely, given that Brailey filed a supplemental memorandum in support of his motion for summary judgment, adding his Virginia statutory claim and reiterating his original motion, on March 13, 2009. The defendant asserts that it had fourteen days – eleven under the Local Rule 7(F) plus three for days for service by mail pursuant to Federal Rule of Civil Procedure 6(d) – in which to file a response, which it did on March 27, 2009. Additionally, the defendant argues that the Court's extension of the discovery period to March 13, 2009 impliedly negated and extended the March 1,

2009 deadline for filing an opposition to the motion for summary judgment.

As the defendant's motion for summary judgment encompassed most, if not all, of the material provided in its response to the plaintiff's motion for summary judgment, the treatment of the response will make little if any difference to the proceeding. Nevertheless, the Court concurs with the defendant. Pursuant to Federal Rule of Civil Procedure 6(b), the February 18, 2009 Order extending the discovery and dispositive motions deadline implicitly extended the defendant's deadline for replying to the plaintiff's motion for summary judgment to, at least, March 20, 2009. By filing a supplemental memorandum in support of his motion for summary judgment, the plaintiff effectively restarted the filing clock, such that timeliness is to be measured from March 13, 2009. Federal Rule of Civil Procedure Rule 6(d) provides that "[w]hen a party may or must act within a specified time after service and service is made [by mail], 3 days are added after the period would otherwise expire[.]" Thus, because electronic filing is considered "filing by mail" for purposes of Federal Rule of Civil Procedure 6(d), see *United States District Court – Eastern District of Virginia Electronic Case Filing (E-Filing) Policies and Procedures* at 25, three days are added to the period within which a brief must be filed. As Local Rule 7(F) provides eleven days for the filing of a rebuttal brief, the defendant had a cumulative total of fourteen days from March 13, 2009 within which to respond to the plaintiff's motion for summary judgment. Thus, the March 27, 2009 filing was timely. Accordingly, the Court denies the plaintiff's motion to strike the defendant's response to the plaintiff's motion for summary judgment.

The latter of Brailey's aforementioned motions asserts that the defendant's reply memorandum in support of defendant's motion for summary judgment was untimely, as it was filed ten days after Brailey's March 27, 2009 response. The defendant argues that its April 6, 2009

response was timely. The defendant asserts that intermediate Saturdays, Sundays, and holidays are not counted in calculating the deadline, given that fewer than eleven days were allotted for action. Under this calculation, April 1, 2009 was three days after March 27, 2009. Thereafter, defendant argues that three additional days were added to this deadline since service occurred through the court's electronic filing system, making April 6, 2009 the proper deadline.

Doubtless, given the proceedings in this case, the better course would have been to file a reply prior to April 6, 2009. Nonetheless, the defendant's reply was timely. Pursuant to Federal Rule of Civil Procedure 6(a)(2), intermediate Saturdays, Sundays, and legal holidays are excluded from the calculation when a party has ten or fewer days within which to act. Under Local Rule 7(F), three days are allotted to the filing of a reply brief, thereby triggering the weekend and holiday exemption. As discussed above, an additional three days is added to this calculation pursuant to Federal Rule of Civil Procedure 6(d). Moreover, under Federal Rule of Civil Procedure 6(a)(3), when the last day of a period is a Saturday, Sunday, or legal holiday, the period runs to the end of the next business day. In calculating the reply period, therefore, the defendant had effectively six business days from Friday, March 27, 2009 to file its reply, making Monday, April 6, 2009 the deadline for a timely action. Thus, the Court denies the plaintiff's motion to strike the defendant's reply to the plaintiff's response to the defendant's motion for summary judgment.

**Motions for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." As the Advisory Committee Notes indicate,

> It is established that although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256-257 (1948).

In reviewing summary judgment motions, the Court must view the facts in the light most favorable to the non-movants. *Lee v. York County Sch. Div.*, 484 F.3d 687, 693 (4th Cir. 2007); *Seabulk Offshore, Ltd. v. American Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir. 2004).

As a preliminary matter, Title 42, United States Code, Section 2000e, more commonly known as Title VII (of the Civil Rights Act of 1964), provides that it is "an unlawful employment practice for an employer … to discharge … or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race." Brailey, an African American, is a member of a protected class for the purposes of Title VII. Accordingly, the Court will consider each motion for summary judgment in turn, drawing all reasonable inferences in favor of the relevant party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1989).

Having evaluated all the materials before it, the Court denies the plaintiff's motion for summary judgment because there is insufficient evidence to support a judgment as a matter of law for the plaintiff under Federal Rule of Civil Procedure 56(c). The Court therefore addresses the defendant's motion for summary judgment, which asserts three main claims: (1) the plaintiff's defamation claim must fail because the plaintiff cannot establish the necessary elements; (2) the plaintiff's disparate impact claim fails for failure to exhaust administrative remedies; and (3) the plaintiff's disparate treatment claim fails because Brailey cannot prove a *prima facie* discrimination case under *McDonnell Douglass Corporation v. Green*, 411 U.S. 792 (1973).

Virginia's Insulting Words Statute provides that "[a]ll words shall be actionable which from

their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01-45.  Brailey appears to rest his defamation claim upon Gregory's statements to the VEC that Brailey had been convicted of a felony and had failed to report this felony conviction to Advance.  However, under Virginia law, communications made to the VEC cannot support a defamation claim.  *Shabazz v. PYA Monarch, LLC*, 271 F.Supp.2d 797, 802-803 (E.D.Va. 2003).  As such, the defendant's motion for summary judgment will be granted as to the defamation claim.

The defendant also argues that the court lacks jurisdiction over Brailey's disparate impact claim because Brailey failed to file an EEOC discrimination charge to that effect within the pertinent time period.  The scope of a permissible civil lawsuit under Title VII is limited to the "administrative investigation that could 'reasonably be expected to follow' from the administrative charges of discrimination." *Johnson v. Maryland*, 940 F. Supp. 873, 876 (D. Md. 1996) (citing *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491(4th Cir. 1981)). The defendant argues that Brailey's EEOC charge alleged discharge on the basis of his race, age, and sex, but does not identify a facially neutral employment practice with a disproportionate impact on a protected group or facts that would lead to such a conclusion.  In response, Brailey proffers his EEOC intake questionnaire, which details his firing for having "indi[ct]ments against [him] that were dismissed. Mr. Iv[i]son stated it didn't make any different[ce] whether they were dismiss[ed] or not, [Brailey] was fired." Moreover, in the VEC hearings, Brailey asked Gregory whether (1) she was aware of his "EEOC … Title 7 case," (2) was "familiar with the Title Seven of the Civil Rights Act," and (3) "understood that under the Title 7 case law … with discrimination on the base [sic] of arrest because black people are arrested more than whites" and that "the law forbids discrimination for the basis of arrest because

7

black people are arrested more than whites." Thus, given the materials presently before the Court, there is a material question of fact whether Brailey exhausted administrative remedies on his disparate impact claim, precluding summary judgment in the defendant's favor on this issue.

Finally, the defendant argues that the plaintiff fails to make a *prima facie* case of discrimination on his disparate treatment claim.

> To establish a *prima facie* case of discrimination in the context of enforcement of employee disciplinary measures, a plaintiff must show: (1) that he is a member of a class protected by Title VII; and (2) that he did not violate the rule in question, *see Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980), or that he received more severe punishment than employees outside the protected class who engaged in comparable misconduct. *See Cook v. CSX Trans. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993); *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985).

*Dunn v. City of High Point*, 68 F. Supp. 2d 672, 679 (M.D.N.C. 1999); *accord Jones v. Giant Foods, Inc.*, No. Civ. JFM-00-3469, 2000 WL 1835393 (D. Md. Nov. 27, 2000). After the plaintiff establishes his *prima facie* case, the employer can rebut the presumption of discrimination by showing the decision-maker in good faith believed the plaintiff committed the violation. *Dunn*, 68 F. Supp. 2d at 680.

Brailey has met his burden of establishing a *prima facie* case of discrimination. A member of a protected class, Brailey was allegedly terminated for violating an Advance rule requiring disclosure of arrests or convictions of Advance employees.[1] It is undisputed that the arrests predated Brailey's employment at Advance, thereby not implicating the disclosure requirement. Thus, the only possible violation was in conjunction with the September 2006 "conviction." However, under Virginia law, the perfection of Brailey's appeal on September 14, 2006 rendered the judgment against him a nullity pending a *de novo* trial in the circuit court. *Briggs v. Waters*, 484 F.Supp.2d

---

1 The Court notes that there is some evidence indicating that Brailey might have been fired for *having* a criminal record

466, 472 (E.D. Va. 2007) (citing *Corbin v. Commonwealth*, 44 Va. App. 196, 208, 604 S.E.2d 111, 117 (2004) and Va. Code Ann. § 16.1-136). Thus, given Brailey's success on appeal, the conviction against him (and the also-dismissed charges), as a matter of Virginia law, never existed – a situation reflected in the "clean" December 2007 background check Brailey submitted in response to the defendant's motion for summary judgment.

The issue is therefore whether Advance has proven its good-faith, if erroneous, belief that Brailey violated company policy by failing to disclose the September 2006 misdemeanor assault and battery conviction. In support of its belief, Advance proffers the Brailey background report that allegedly precipitated the termination. However, included in the materials before the Court are numerous contradictory statements by Advance employees concerning the reason for Brailey's termination. For instance, in the VEC hearing, Gregory alternatively asserted that Brailey was fired for having a felony, for failing to disclose the felony, and for "the whole record;" Gregory also admits that Brailey attempted to explain the dismissal of these matters during the termination meeting, but that he was not allowed to do so. Moreover, in his deposition, Ivison stated that his involvement in the decision to terminate Brailey was "when [he] discovered that [Brailey] had an *arrest* that was not reported to [Brailey's] immediate supervisor[,]" Ivison consulted with Brown. (emphasis added). Given the changing explanations for the defendant's decision to terminate Brailey, particularly juxtaposed with Brailey's acknowledged attempt to address Advance's misconceptions, the Court finds that there are material questions of fact concerning Advance's good-faith belief that Brailey violated Advance policy. *See White v. W.R. Winslow Mem'l Home, Inc.*, No. 99-1781, 2000 WL 346497, at *2 (March 15, 2000)(quoting *Fuentes v. Perskie*, 32 F.3d 759, 765

---

rather than for failing to disclose it.

(3d Cir. 1994)(further citation omitted))(noting a plaintiff can succeed in proving pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence.") Accordingly, the Court denies the defendant's motion for summary judgment in regard to the disparate treatment claim.

### III. CONCLUSION

For the aforementioned reasons, the Court denies the plaintiff's motion to strike defendant's opposition to plaintiff's motion for summary judgment, the plaintiff's motion to strike defendant's reply to plaintiff's response to defendant's motion for summary judgment, and the plaintiff's motion for summary judgment. The Court also denies the defendant's motion for summary judgment on the disparate impact and disparate treatment claims, but grants the motion on the defamation claim. The Court notes that these rulings, and in particular the partial denial of the defendant's motion for summary judgment, are in no manner indicative of a likelihood of success at trial. Accordingly, the Court strongly encourages the parties to weigh the costs and risks of trial and reconsider the possibility of settling this matter.

An appropriate Order shall issue.

May 6, 2009  /s/
DATE  RICHARD L. WILLIAMS
  SENIOR UNITED STATES DISTRICT JUDGE